## The People vs. John Stewart.

Section 5809 of Compiled Laws, which provides that every person who shall have in his possession a counterfeit bill, with intent to utter or pass the same, or to render the same current as true, knowing the same to be counterfeit, shall be punished, &c., embraces two distinct offenses, — one, which consists in having in possession a counterfeit bill, with intent to utter or pass the same as true; the other, in having it in possession, with intent to sell or otherwise dispose of it as counterfeit bill, to be rendered current, or uttered or passed as true.

An indictment, under this section, contained two counts; charged the defendant, in the first, with having in his possession a one dollar counterfeit bill on the P. Bank, with intent to utter or pass the same as true; and, in the second, with having said bill in his possession, with intent to render the same current as true. The only proof made of an overt act, under either count, was by an accomplice, that he purchased of defendant, as counterfeit, ten similar bills, including the one described; and that, in the conversation at the time of this purchase, defendant told him he should, at a specified time, have in his possession a large quantity of counterfeit bills on another bank. The prosecution then offered to prove that, at about the time so specified, defendant was arrested, and the counterfeit money about which he had told the accomplice found in his possession; —*Held*, That this evidence was inadmissible under the second count, and that it was not admissible under the first count, to show the *scienter*, as no evidence had been given to prove that count.

*Heard June 4th and 5th. Decided June 12th.*

On exceptions from Wayne Circuit.

The defendant was indicted under section 5809 of Compiled Laws. The indictment contained two counts. The first count charged him with having in his possession a one dollar counterfeit bill on the Providence Bank, Rhode Island, with the intent to utter and pass the same as true: the second count with having the *said bill* in his possession, with the intent to render the same current as true.

On the trial, the prosecution first introduced John S. Armstrong as a witness, whose testimony tended to prove that some three or four weeks previous to May 12th, 1856, he met the said defendant in Carson's Saloon, in Detroit, and then bought of him ten one dollar bills, purporting to be on the Providence Bank, Rhode Island, for which he paid the defendant four dollars, and that the bill described in the indictment was one of those so purchased. The testimony of the said Armstrong further tended to prove that, in a conversation which he then and there had with the defendant, the defendant told him that the plate was genuine, but that the bills were altered, and had not been blown, and that he (Armstrong) need not be afraid to pass them anywhere in the city; and that the defendant further said to Armstrong, that, in about three weeks, he (the defendant) would have a large amount of ten dollar counterfeit bank bills on the City Bank of Montreal, and that Armstrong could then have what he wanted.

The prosecution then introduced testimony to prove the existence of such a bank as the Providence Bank of Rhode Island, and that the bill described in the indictment was on a genuine plate, but had been altered.

F. X. Cicott was then called as a witness, whose testimony tended to prove that he arrested the defendant on the 12th of May, 1856. The prosecution then offered to prove by the said Cicott, that, at the time he arrested the defendant, he found in defendant's possession some eight thousand dollars in ten dollar counterfeit bills on the City Bank of Montreal. The counsel for the defendant objected to this testimony, and insisted that it was not admissible, first, because there was no testimony in the case tending to support the first count in the indictment; and, second, because such testimony was irrelevant and inadmissible to the second count. The Court overruled the objection, and admitted the testimony; and defendant excepted. The testimony of said Cicott tended to prove the facts so offered to be proved by him.

The prosecution introduced no further testimony under either count in the indictment.

No testimony was introduced by the defendant, except to impeach the general reputation of Armstrong for truth.

After the evidence was closed, the counsel for the prisoner asked the Court to withdraw from the consideration of the jury the testimony of Cicott, tending to prove the finding in the defendant's possession of the counterfeit bills on the City Bank of Montreal, because there was no testimony tending to prove the *first count* in the indictment, and because such testimony was inadmissible, and did not legally tend to prove the *second count*. But the Court refused so to do; and defendant excepted.

The counsel for the defendant then requested the Court to charge the jury that there was no testimony in the case tending to prove the *first count* in the indictment. The Court refused so to charge; but did charge the jury that, if they found the defendant had the bill described in the indictment in his possession, with the intent to utter and pass the same as true, knowing the same to be counterfeit, that then it would be their duty to return a verdict of guilty on the *first count;* and for the purpose of determining whether the defendant knew the bill was counterfeit or not, the testimony of Cicott, as to finding in the defendant's possession the Canada counterfeit money, was proper to be considered by them under the circumstances.

The Court further instructed the jury that, if they should find from the testimony that the defendant sold the bill described in the indictment, knowing it to be counterfeit, to the witness Armstrong, as counterfeit money, and that the witness Armstrong, knowing it to be counterfeit, bought it as such, then it would be their duty to find the defendant guilty on the *second count*.

To the charge of the Court so given, and to the refusal to charge as requested by the defendant's counsel, the defendant excepted.

The jury returned a verdict of guilty on the second count.

*Burt & Maynard*, and *G. V. N. Lothrop*, for defendant:

The offense proved upon respondent was selling counterfeit money, as such, to one who knew it to be counterfeit. The *scienter* was as fully proved by Armstrong as the sale of the bill.

1. Such being the offense, the admission of Cicott's evidence was erroneous. Such evidence is never allowed, except where it is necessary to prove the guilty knowledge of defendant. It is not admissible for the purpose of showing the *quo animo*, or as confirmatory to the proof of the offense itself.

The first count charges defendant with passing the bill as *true*. The entire proof in the case showed that he passed it as *false*, or counterfeit. Passing counterfeit money as true, and passing it as counterfeit, are distinct offenses; and the proof applicable to the one is wholly inapplicable to the other. The first count, then, was wholly unsupported by proof, and Cicott's testimony was not admissible as applicable to that.

The second count in substance charges the defendant with passing the bill *as false, or counterfeit;* and the proof objected to was not applicable to such an offense.— *Walker vs. Com.* 1 *Leigh*, 628; *Com. vs. Stearns*, 10 *Metc.* 257; *State vs. Williams*, 2 *Rich.* 419; *Rex vs. Wilkes and Edwards*, 7 *C. & P.* 272; *Hooper vs. State*, 8 *Humph.* 93; *Van Valken burgh vs. State*, 11 *Ohio*, 404; *Hutchings vs. State*, 13 *Ohio*, 198.

2. When, therefore, the proof was closed, and no testimony was introduced tending to support the first count in the indictment, it was the duty of the Court, upon the request of the defendant, to withdraw from the jury the testimony of Cicott as to finding other counterfeit money in

the defendant's possession when he was arrested. — *Spears vs. Cross*, 7 *Port.* 437; *Decherd vs. Morrison*, 2 *Swan*, 305.

3. The Court erred in not charging the jury as requested, as to the first count. — *Weidler vs. Farmers' Bank*, 11 *S. & R.* 135.

4. The defendant claims that the charge of the Court was erroneous, as applied to both counts: that section eight, chapter 155, of the Revised Statutes of 1846 (the section under which the indictment is found), does not embrace the selling of counterfeit money, as such, to one who knows its character.

*J. M. Howard, Attorney General,* for the People :

1. The prediction of the witness that he should have the Montreal money, was a part of Armstrong's conversation with him, and, of course, a part of the *res gestæ;* and the fulfillment of that prophecy was equally a part of the *res gestæ.* — See 1 *Greenl. Ev.* § 108.

2. But evidence of possession of other counterfeit bills, is always admissible to show the prisoner's guilty knowledge. — *Whart. Cr. L.* §§ 631, 1457; 5 *McLean*, 23; *Ros. Cr. Ev.* 82, 83, 94, 95, *and cases cited;* 10 *Metc.* 257; 3 *Ibid.* 23; 4 *Ibid.* 42.

In the present case it tends to strengthen the proof of the confession to Armstrong that the bills he sold him were counterfeit, and consequently to corroborate the latter, who, so far as the bill of exceptions shows, was an accomplice.

Testimony can not be excluded as irrelevant which would have a tendency, however remote, to establish the probability or improbability of the fact in controversy. — *Trull vs. True,* 33 *Maine,* 367.

3. The instruction to the jury, that if they should find that the prisoner sold the bill to Armstrong as counterfeit, and Armstrong knew it to be such, it would be their duty

to find the prisoner guilty, was clearly correct.— *Stewart's Case,* 4 *Mich.* 655.

MANNING J.:

The section under which the prisoner was indicted embraces two separate and distinct offenses (*Comp. L.* §5809; *Stewart's Case,* 4 *Mich.* 655)—one, which consists in having in possession a counterfeit bill, with intent to utter or pass the same as true, knowing it to be false, &c.; the other, in having it in possession, with intent to sell or otherwise dispose of it as a counterfeit bill, to be rendered current, or uttered or passed as true.

The Court erred in admitting the evidence of Cicott. The having in possession, by the prisoner, the large amount of counterfeit bills, on the 12th of May, was not, in itself, a crime, and if it had been, the prisoner was not on his trial for that offense. The evidence was calculated to prejudice the jury against the prisoner.

It would, in no circumstances, be admitted to prove the last count, on which the prisoner was convicted. Under the first count, it would have been admissible to show the *scienter*, after testimony had been given to prove that count, but not before. When it was objected to and admitted, no such testimony had been given; nor was any given afterwards. Neither was it admissible to corroborate Armstrong. It was not evidence of any fact proved by him, necessary to make out the offense charged in the last count, or any circumstance sworn to by Armstrong necessarily connected with it.

It must be certified to the Circuit Court there was error on the trial of the prisoner, in admitting the evidence of Cicott, and that a new trial be had.

The other Justices concurred.

*New trial awarded.*